IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANNAMALAI ANNAMALAI,

                      Petitioner,

  v.

ERIC EMMERICH,

                      Respondent.

OPINION and ORDER

24-cv-167-jdp

---

      Petitioner Annamalai Annamalai, who is incarcerated at FCI Oxford, has an extensive history of abusive litigation in federal and state courts. Annamalai is seeking restoration of good-conduct time based on allegations that BOP officials unlawfully disciplined him, and he is proceeding without counsel. In response to the court's screening order, Annamalai brings an amended petition under 28 U.S.C. § 2241. Respondent answered the amended petition, and Annamalai submitted a reply. Dkt. 30 and Dkt. 50.

      The evidence shows that Annamalai directed his son, Ashok Annamalai, to facilitate a three-way call with the clerk's office for the Indiana Supreme Court. That call led to an incident report alleging that Annamalai violated BOP policy by circumventing staff's ability to monitor the frequency of his telephone use. Annamalai received ample notice of the disciplinary charge and, with the help of his personal representative, had an opportunity to contest the charge at a disciplinary hearing. The disciplinary record, which includes a transcript of the call, conclusively shows that Annamalai received all the process he was due, and that his violation of BOP policy, not retaliatory animus, led to the incident report. I will deny the petition. I will also rule on Annamalai's other pending motions.

BACKGROUND

Annamalai was convicted in the Northern District of Georgia of several offenses, including bank fraud, conspiracy to commit bank fraud, filing a false federal income tax return, and making a false statement under oath in a bankruptcy proceeding. *See Annamalai v. Emmerich*, No. 24-cv-678-jdp, 2024 WL 4625803, at *1 (W.D. Wis. Oct. 30, 2024) ("*Annamalai I*"). Annamalai has a projected release date of October 12, 2028.

A. **State-law breach-of-contract action**

In April 2017, while in federal custody, Annamalai brought a breach-of-contract action in Vigo County, Indiana against a sole private defendant, Vishal Kalyani. *See* docket sheet in Vigo County (Ind.) Superior Court case no. 84D02-1704-MI-2768.[1] Apparently, Annamalai based his breach-of-contract claim on allegations that, "after he was convicted more than a decade ago, at least 169 persons and entities looted and or sold, transferred, and absconded with property that [Annamalai] alleges he owned." *Annamalai v. Montgomery Cnty. Treasurer* ("*Annamalai II*"), No. 24-cv-268, 2024 WL 4599935, at *4 (S.D. Ohio Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4881269 (S.D. Ohio Nov. 25, 2024).

In November 2020, Annamalai obtained a purported "final order of specific performance," which "consists of [Annamalai's own] handwritten orders" that were apparently signed by a "special judge." *See id.* at *4; *see also* Dkt. 18-10 at 4–5. From what I can gather, the basis of the "final order of specific performance" is the alleged failure of numerous "account debtors," who Annamalai alleges stand "in privity" with Kalyani, to respond to Annamalai's non-party discovery requests. *See Annamalai II*, 2024 WL 4599935, at *4–5; *Annamalai I*, 2024

---

[1] *Available at* https://public.courts.in.gov/mycase/#/vw/Search.

WL 3694446, at *1; Dkt. 18-10 at 4; Dkt. 18-12. Annamalai alleges that the "account debtors" include BOP officials. *Annamalai I*, 2024 WL 3694446, at *1; Dkt. 18-11 at 5–20. Even though a special judge signed it, the "final order of specific performance" was described by courts as "extraordinarily odd" and "nonsensical." *Annamalai II*, 2024 WL 4599935, at *4. There's no clear indication that any "account debtor" received notice of the Vigo County case. *See Annamalai II*, 2024 WL 4599935, at *5; *see also* Dkt. 18-12.

**B. Incident reports at FCI Oxford and disciplinary hearing**

On January 29, 2018, Annamalai received incident report 3083231, which was prepared by S. Cope. Dkt. 18-1 at 2. Cope wrote that, on January 9, 2018, Annamalai completed an unauthorized three-way call by having Ashok try to connect him with a federal court of appeals. *Id.* It's undisputed that the '231 report was "dismissed and expunged," and that Annamalai didn't lose good-conduct time based on this report. *See id.*; Dkt. 31-1; Dkt. 31-2.

Also on January 29, Annamalai received incident report 3083232, which Cope prepared. Dkt. 31-10 at 2. Cope wrote that, on January 22, 2018, Annamalai conducted an unauthorized three-way call by having Ashok connect Annamalai to "Katherine," a clerk's office employee in the Indiana Supreme Court. *See id.*; Dkt. 31-11 at 4–10. Cope also wrote that the '232 report was based on review of a transcript of the phone call, a part of which was translated to English from Tamil. Dkt. 31-10 at 2.

The same day, the investigator, D. Fayad, delivered the '232 report to Annamalai. *Id.* at 2–3. Fayad noted that Annamalai told Fayad that "both numbers" (his son's and the Indiana Supreme Court's) were on his approved list and that he needed more time to conduct

3

legal work. *Id.* at 3. Fayad concluded that Annamalai had been properly charged, and he noted that the matter was pending before the unit disciplinary committee for further disposition. *Id.*

On January 31, 2018, the unit disciplinary committee recommended that the '232 report be expunged. *Id.* at 2. But despite that recommendation, due to the seriousness of the charge, the committee also referred the '232 report to the disciplinary hearing officer. *Id.*

That day, Annamalai's counselor, D. Gladney, provided Annamalai with a copy of the "Notice of Discipline Hearing Before the (DHO)" form. *Id.* at 5. Annamalai requested a psychologist, Owings, to be his staff representative, and Annamalai asked to present Ashok and another individual as witnesses to show "[t]hat is was not a third party call." *Id.* Gladney also provided Annamalai with an "Inmate Rights at Discipline Hearing" form. *Id.* at 4.

Annamalai's disciplinary hearing was held on April 10, 2018. Dkt. 31-11 at 2. The hearing officer, M. Puckett, noted that Annamalai and Owings appeared and "agreed that they had met and were ready to proceed." *Id.* at 1. Puckett also noted that Owings had reviewed the paperwork and confirmed that Annamalai's "due process rights [had] been afforded," and that Owings said that Annamalai had asked Owings "to review the materials and help him through the process." *Id.*

According to Puckett, Annamalai's primary defense was that: (1) the unit disciplinary committee recommended expunging the '232 report; (2) both phone numbers were on his approved list, and he was only calling the courts about his pending cases; and (3) his proposed witnesses, Ashok and Parvathi Sivanadiyan, would testify that Annamalai did not make a three-way call. *Id.* at 2–3, 11.

Puckett denied Annamalai's request to present Ashok and Sivanadiyan as witnesses because a certified third-party linguist prepared a transcript of the call. *Id.* at 3, 11. But Puckett

4

accepted that Ashok and Sivanadiyan would testify that Annamalai didn't make a three-way call if they appeared. *Id.* at 3.

Puckett found that Annamalai committed the act as charged. *Id.* Puckett acknowledged that both numbers were on Annamalai's approved contact list, but he explained that Annamalai had to call those numbers "directly from [his] phone account." *Id.* at 11. Annamalai could not "call one phone number of a family member and have them connect [him] to another phone number," which was a "three-way call [that] circumvent[ed] phone monitoring and frequency of use." *Id.* As a result, Puckett disallowed 27 days of good-conduct time. *Id.* at 11. B. Mathis documented that Annamalai received a copy of Puckett's decision. *Id.* at 12.

ANALYSIS

A. Preliminary matters

1. Challenge to '231 report

In his amended petition, Annamalai alleges that he was denied due process regarding both the '231 and '232 incident reports. Dkt. 16 at 6–7. Annamalai seeks restoration of 27 days of good-conduct time and "expung[e]ment" of the related disciplinary records. *Id.* at 8.

Annamalai's challenge to the '231 incident report is moot. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To satisfy this "case or controversy" requirement, "parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A party has no stake in a case when the court cannot grant any relief that would have a meaningful effect on a party. *United States v. Shorter*, 27 F.4th 572, 575 (7th Cir. 2022). If a party no longer has a personal stake in the outcome of the

5

lawsuit, the lawsuit is moot and the court lacks jurisdiction to hear it. *See Lewis*, 494 U.S. at 477; *see also Spencer*, 523 U.S. at 7.

It's undisputed that the '231 report was dismissed and expunged, and that Annamalai didn't lose any good-conduct time based on that report. Annamalai has already received all the relief that he seeks based on his challenge to the '231 report, so this challenge is moot.

2. **Pending motions**

Two motions are pending. In the first motion, Annamalai asks for: (1) an emergency status hearing and oral argument; (2) a copy of the docket sheet; and (3) copies of orders entered since October 2024. Dkt. 55 at 2. In his second motion, Annamalai acknowledges receipt of a docket sheet from the clerk's office and withdraws the second and third requests. Dkt. 57.

That leaves Annamalai's first request for a status hearing and oral argument, which I will deny. The request for a status hearing is now moot. Oral argument is not appropriate because, as explained below, the paper record conclusively shows that Annamalai's amended petition lacks merit.

3. **Challenge to '232 report**

I take Annamalai to challenge the '232 report on two primary grounds. The first ground is that Annamalai was denied procedural due process during the disciplinary proceedings for the '232 report because: (1) his rights weren't "pronounced" before the hearing; (2) he wasn't allowed to review a recording or transcript of the call; (3) Owings didn't meet with Annamalai before the hearing, review the transcript of the call, or contact Ashok and Sivanadiyan; (4) Puckett didn't allow Annamalai to present Ashok and Sivanadiyan as witnesses at the hearing; and (5) the transcript of the call was "corrupted." *See* Dkt. 16 at 7–8; Dkt. 17 at 2.

6

Annamalai's second ground is that Cope wrote the '232 report to retaliate against Annamalai because Annamalai had obtained the "final order of specific performance" against Cope and other individuals in the Vigo County case. *See* Dkt. 16 at 8; Dkt. 17 at 2–3.

    a. **Procedural due process claim**

As a general rule, due process requires prisoners in disciplinary hearings to receive: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence . . . ; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). "[S]ome evidence" must support Puckett's decision. *Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005).

Annamalai hasn't developed any argument on the second requirement and, on the fourth requirement, the evidence is that Annamalai received a copy of Puckett's decision. Dkt. 31-11 at 12. My analysis is limited to the first and third requirements, and to whether some evidence supported Puckett's decision.

On the first requirement, advanced notice, the evidence is that Fayad delivered the '232 report to Annamalai on January 29, 2018. Dkt. 31-10 at 2–3. The evidence is also that, two days later, Gladney provided Annamalai with both the notice of discipline and inmate rights forms. *Id.* at 4–5. Annamalai signed the notice of discipline and inmate rights forms, which refutes any suggestion that he didn't receive them. Annamalai received ample notice of the disciplinary hearing, which was held more than two months later. At the hearing, Puckett documented that Annamalai and Owings "agreed that they had met and were ready to

7

proceed." Dkt. 31-11 at 1. The record conclusively shows that Annamalai received ample advanced written notice of his disciplinary charge.

The next issue is whether, under the third requirement, Annamalai received an opportunity to call witnesses and present documentary evidence. I begin with witnesses. The rule that a prisoner has a right to call witnesses at a prison disciplinary hearing is not absolute. Prison officials have discretion to refuse to allow witnesses for "irrelevance" or "lack of necessity." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

Puckett denied Annamalai's request to call Ashok and Sivanadiyan for lack of necessity. Puckett had a transcript of the call prepared by a certified third-party linguist. Dkt. 31-11 at 3, 11. The transcript shows that Annamalai gave Ashok the Indiana Supreme Court's phone number and directed Ashok to call that number so that Annamalai could speak with Katherine, which Annamalai managed to do. Dkt. 31-11 at 4–10. The transcript of the call flatly contradicted Ashok's and Sivanadiyan's proffered testimony. Annamalai's bare statement that the transcript is "corrupted" lacks factual support and doesn't show that the transcript is inaccurate or otherwise unreliable. *Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (habeas petitions "must meet heightened pleading standards"). Puckett's exclusion of Ashok and Sivanadiyan as witnesses didn't violate procedural due process.

That leaves, under the third requirement, the issue of documentary evidence. Annamalai received an opportunity to present that evidence. The "due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." *Jones v. McCaughtry*, 6 F. App'x 371, 372–73 (7th Cir. 2001).

Puckett noted that Annamalai "understood his rights and did *not* submit documentary evidence." Dkt. 31-11 at 3 (emphasis added). The inmate rights form advised Annamalai of this right, Dkt. 31-10 at 4, so he knowingly forfeited it. Due process does not require Annamalai to receive another opportunity to present documentary evidence when he could have presented that evidence at the hearing. Also, even though Annamalai declined to present documentary evidence at the hearing, Annamalai made an extensive statement in which he referred to several documents in the disciplinary hearing record. *See* Dkt. 31-11 at 2. The evidence shows that Annamalai received an adequate opportunity to present documentary evidence to contest the disciplinary charge.

The next issue is whether "some evidence" supported Puckett's decision. The "some evidence" requirement is quite lenient; sanctions imposed in a prison disciplinary hearing are subject to the "narrowest judicial review." *See United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007). The issue is whether there is any evidence in the record, even just a "modicum," that could support the hearing officer's decision. *Hill*, 472 U.S. at 455–56. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

This lenient standard is easily satisfied based on the transcript showing that Annamalai had Ashok arrange a three-way call with Katherine. Even though the Indiana Supreme Court's phone number was on Annamalai's approved contact list, making a three-way call violated prison policy by circumventing BOP staff's ability "to monitor frequency of telephone use." 28 C.F.R. § 541.3, Table 1, Prohibited Act Code 297; Dkt. 31-11 at 1, 11.

Annamalai also alleges that his personal representative, Owings, was ineffective because she didn't meet with Annamalai before the hearing, review the transcript of the call, or contact

his witnesses. I will assume for purposes of this opinion that these rights enjoy due process protection. But the disciplinary hearing record mostly contradicts Annamalai's allegation. Puckett documented that Annamalai and Owings "agreed that they had met and were ready to proceed." Dkt. 31-11 at 1. Even if Owings failed to contact Ashok and Sivanadiyan or review the transcript, Annamalai hasn't explained how these failures deprived him of a fair opportunity to contest the disciplinary charge. The witnesses' testimony was unnecessary and the transcript conclusively showed Annamalai's guilt.

I will deny the petition on Annamalai's procedural due process claim.

### b. Retaliation claim

Annamalai alleges that Cope wrote the '232 report to retaliate against Annamalai because Annamalai had obtained the "final order of specific performance" against Cope and other BOP officials in the Vigo County case.

To establish a retaliation claim, Annamalai must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). I limit my analysis to the third element, causation.

To establish that Cope was motivated to retaliate based on Annamalai's state-court litigation, Annamalai must show that Cope had actual knowledge of that litigation. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021); *Healy v. City of Chicago*, 450 F.3d 732, 740 (7th Cir. 2006).

It's unlikely that Cope had actual knowledge of Annamalai's state-court litigation when Cope isn't a party to the Vigo County case and there's no clear indication that Cope received

10

notice of any proper third-party discovery request in that case. But even if Cope knew about the state case, the disciplinary record conclusively shows that Cope based the '232 report on Annamalai's participation in a three-way call in violation of BOP policy. Also, regardless of retaliatory motive, a prisoner can't win a retaliation claim for a conduct report given for a legitimate reason. *See Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015). Again, the record shows that Annamalai received the '232 report for a legitimate reason, i.e., his participation in a three-way call.

Annamalai says that Annamalai's counselor, Gary Burgess, told Annamalai that Cope wrote the '232 incident report because the '231 report was dismissed. Dkt. 17 at 2. The disciplinary record also contradicts this bare statement, which in any case is inconsistent with Annamalai's claim that Cope wrote the '232 report because of his state-court litigation. I will deny the petition on Annamalai's retaliation claim.

ORDER

IT IS ORDERED that:

1. Petitioner Annamalai Annamalai's amended petition, Dkt. 16, is DENIED.

2. Petitioner's emergency motion for status hearing and oral argument with request for docket sheet, Dkt. 55, is DENIED.

3. Petitioner's verified motion to amend his emergency motion, Dkt. 57, is GRANTED solely to amend the emergency motion but otherwise DENIED.

4. The clerk of court is directed to enter judgment and close the case.

Entered December 22, 2025.

                               BY THE COURT:

                               /s/

                               _____
                               JAMES D. PETERSON
                               District Judge